Thank you, Your Honors. Anthony Persher on behalf of the defendant appellant Andre Wood. May it please the court. We are here with regard to an appeal of a judgment that was answered against Ms. Wood for the approximate sum of over $900,000 with continuing to accrue interest. This arises out of a summary judgment motion practice wherein the plaintiff prevailed on a claim that was not asserted in its own second amended complaint on a theory of liability that was not argued by the plaintiff during its motion practice, including in its own moving papers as well as in opposition to our moving papers. So our main argument on this is the party presentation principle, and it is our position that the district court... How does the reconsideration motion affect that once that notice is out there through that process? Sure. So under 56F, basically there's notice and opportunity, right? So I think it's fair to say that the judge's summary judgment order was notice that he was going in that direction. However, personally believe that Rule 56F only applies to claims that have actually been asserted, not something that's been invented by the court and argued by the court itself as opposed to the parties. The second part and the more crucial part with regard to Rule 56 is there was no opportunity on our behalf. At the time of this motion practice, the local rules didn't allow supplementation of evidence, submission of affidavits, and the court did not open more... Let me ask you about that because I guess that gets to the merits because it depends on what we think the third-party beneficiary rule is. And you believe that there should be discovery on what was intended at the time by Ms. Wood, right? I think it frankly applies to both the signatories to the agreement. Ms. Wood, we said in our papers when we raised it in reconsideration, obviously we were not allowed to submit an affidavit and we were not given an opportunity to... Maybe the law is that that doesn't matter. Let me ask you this. If two parties agree that someone is going to give up their rights to a pension annuity but they don't have a particular person in mind, they don't know who the person is who once they give up that right is going to benefit from that, is it your view that that person cannot be a third-party beneficiary just because they don't know the identity of the person who is going to benefit from that contract? I just find that... I don't think that makes any sense. I think there has been case law and I will concede that there has been where classes have been allowed to be basically... Well, not classes, just an individual person. Let's say, I'm not saying this happened, but just to crystallize it. When they were signing the property settlement agreement, they had a conversation. It was like, look, I don't want you to have this money. I want it to go to my family. So we're going to put this provision in here. So there's no particular person. She doesn't know the identity of the person, but she certainly knows when she gives up that right that his pension money is going to go to somebody else. Why wouldn't that person be an intended... whoever that person is, the intended third-party beneficiary of that contract? Well, as a primary point, it wasn't asserted an intended third-party beneficiary claim. There was an assignment, a written assignment here. We'll just put that aside. I just want to understand the law. Sure. All right? We'll get to the assignment and all those things. But I'm just trying to understand why the person who ends up being the beneficiary is not someone who can sue on behalf of the... Under the property settlement agreement, whatever it said. We could talk about the ambiguity or whatever you think the provision is, but I think you're suggesting that no matter what the language is, if they don't have an intention that it goes to a particular person, then there is no third-party beneficiary. I'm finding that hard to believe. I don't think that's our argument. I think we're arguing with regard to this specific provision in this specific settlement agreement. What I think you're asking, I do believe that... So then there doesn't need to be discovery on whether she knew the father was the second beneficiary or not. If the law is, if there was an intent that someone else should get that money, but you don't have to know the identity, then this issue about whether you had an opportunity to depose people about who knew what about the second beneficiary all becomes immaterial, right? I don't think it becomes immaterial because I do think that it still requires some specificity of identification of the intended party. Just because she waived doesn't mean that the money was going to... Assuming under your argument, assuming under your argument that she acknowledged that she was waiving so the money could go to the family, this was still a beneficiary designation form that could be changed and modified up to the deed that he died. It doesn't matter because it could have ended up being not the family. It could have ended up being a friend. It could have ended up being his then-girlfriend. He could have changed it to numerous other people. So your argument is that there never could be a third-party beneficiary to this agreement. No matter what the... I don't believe... Because you can change it any time, no matter how specific the language is about his intent and their joint intent, you're saying because he could change it later that nobody else can sue on that contract except him? Unless there's an identifiable clause within the agreement as stating who the intended third-party beneficiary is. And what would you cite for that under New Jersey law? That was the Grand Street Artist case where they basically said foreseeability of a prospect... No, I read that case. That case is so far different from this case. That was suing a consultant in an environmental case where the president of the company said, I'm a third-party beneficiary of this consulting agreement, and the court said no. So that is so far from these facts. But at the same time, that was with regard to, I believe, coverage of insurance, and it was identifiable as to board members, officers of the company. That would be essentially a classification. Because we have a pension fund where if your client waives her right, clearly it's going to go to somebody else, right? There's going to be another person who that money is going to flow to one way or the other.  No? If he doesn't fill out a form, or he could designate his own estate. Obviously, that would be against the state plan and ideas. But he could basically revoke it, leave it silent, or identify his estate. It does not mean to go to a specific person. Right, right. Isn't that consistent with what my colleagues are arguing? They're suggesting that somewhere there's going to be a beneficiary, whether it's the estate or some named individual. So why isn't the class of unidentified individuals or entities that essentially constitute whoever turns out to be the beneficiary, why isn't that a third-party beneficiary of this contract? Because you still need the intent by Steve and the decedent, as well as Ms. Wood, as the other signer of this agreement. But does that intent have to run towards an identified individual, or does that intent have to reflect that it's going to go to whoever is the beneficiary other than her, by virtue of the terms of the policy and beneficiary designation? I believe the reality is it's probably full somewhere in the middle. There needs to be some specificity of identification, like Judge Bianco was saying. If there was a provision or something that said, I want this to go to my family, obviously that's an intended sphere that is identifiable, that at his death we could know the father, we could know his brother, his sister. I'm not hypothetical. I wasn't suggesting that. Suppose he hadn't filled out a form at all. Suppose they're filling this out, and he's like, look, I have this pension money, and I don't want you to get it. And he hadn't filled out who was going to get it other than her. You're saying that that's no good, right? Even though he told her, look, I don't want you to get this. I want to give this to somebody else. That's somebody else who he designates the day after this is entered. You say would have no, cannot enforce that contract, even though that was his intent. And he told her what his intent was. He didn't say who the person was. Well, under what you just said, he executed a designation change in it. So we would have some— No, he hadn't done it yet. He hadn't filled out the form yet at all. He just said, look, we're getting divorced. You're going to give up your rights to this because I want to give this to somebody else. And the next day, he filled out the designation form, giving it to his father. You would say no good, right? No. If he changes the designation, that would supersede. In this case, we have a 1984 designation. Let me ask you—I don't want to go too much in circles on that. On the language itself, and you can correct me if I'm wrong, your view is that when it says any claims, that she waives any claims she might have in and to these benefits, including the right to be named as a survivor beneficiary, that that just means any type of, like, marital claim. That's my position, that that language is basically essentially that she cannot go if he changes the designation and attempt to enforce a spousal privilege, essentially. So can I ask about that? And I don't know if this falls in the spirit of probing an issue that's not raised or waived, but I read your brief as saying that the agreement is ambiguous as to whether or not that waiver extends to this scenario where she remains the designated beneficiary, and at a minimum, it ought to go back on that. I don't see you arguing in your brief what I understood you to argue below, which is that especially in light of the other provision in the agreement that says, hey, this doesn't require her to renounce any benefits that she acquires through a will or other document, which this sure looks like, have you abandoned your argument that this whole conversation we're having is red herring because the waiver doesn't purport to waive her benefits if he names her and continues to name her as a beneficiary voluntarily without any? No, I don't believe we have abandoned that argument. Where is it in your brief? I believe we raised it in the part with regard to that she did not breach it because under the circumstances, she is the recipient of a benefit as opposed to submitting an affirmative claim to the union to receive the benefits. So I think it fits within that argument. I think we had a more tailored argument up here as opposed to what we raised in the lower court. Obviously, we have, in our opinion, numerous errors that are reversible, and obviously we wanted to focus on what we considered were the primary arguments. However, that, I believe, is encompassed in our argument that she is still receiving some type of gift or request because it happens upon death through an other document, the beneficiary designation form, to receive something. And under the other provision in the property settlement agreement, the decedent, Stephen, maintained the right to do whatever he wanted with the property, control it. And it's our opinion that there is a freedom of choice argument here that by what the lower court did, he basically put his intent on what he thought the equity of this should be as opposed to what the decedent, which is indicated by the beneficiary designation forms that are enforced as to what his intent was, and that is keeping Ms. Wood as the primary beneficiary, even though several years had passed since the divorce. In your brief, you argue that you don't make the direct argument, but you say at a minimum it's ambiguous as to whether that waiver extends to this. If we agreed with that, what would be the extrinsic evidence or other argument that would come to bear on remand as to the scope of the waiver? Well, as an initial point, it would be plaintiff's burden to show the intent of Stephen and that there was a violation because of what Ms. Wood did. That would be done probably not through any further. When you say the intent, I just, so we're now talking about what the waiver means, right? Yes. And so there's two, there's an argument that the waiver means she's essentially not only waived her right to be named, which might be otherwise compelled by law, at least insofar as they were married, but she's waived the receipt of any benefits pursuant to his beneficiary designation, even if he's authorly named her after the fact. And that's a dispute, and I'm just trying to figure out by arguing that it's ambiguous, if it is in fact ambiguous, what would be, what would one bring to bear? What would the evidence look like? I believe it ends up, I believe it's an issue for trial that has to go to a jury. As the lower court found in its own opinion, he opined that this was poorly drafted. He opined that the way it was drafted, I believe the language is invited interpretation. So you just would ask the jury to decide what the waiver means, or is it often, you know, you send it to the jury giving them some additional evidence besides the terms itself? Well, on our side, we would have Ms. Wood testify as to what she believed it was. And I believe we would. And what would she say? Based on what our conversations with Ms. Wood, she would say that she did not believe that this was constituted a waiver, that she believed that this constituted the inability to assert a spousal claim if he changed the designation. She would assert that she never intended the father to be an intended third-party beneficiary under this agreement. And I believe we would probably present her attorney as to what the negotiations were on our side of the defense at a trial. All right. Thank you. I obviously went over, so I'm just going to keep my minute for it, and obviously the rest of my arguments are in the papers. Yes. It's fine. Thank you. It was helpful. Mr. Friedman, you're up. Thank you. Thank you, Your Honor. May it please the Court. Perry S. Friedman, attorney for the appellee in this case. Vivian Kulwick as the administratrix for Steve and Elliot Wood. First, regarding the breach of contract, all because the Court stated in its opinion that the contract was poorly drafted doesn't necessarily mean it was ambiguous. I believe that a plain reading of this contract shows that she waived, and I think the key word, she waives any claim that she might have. But why couldn't that any claim be a marital claim, not a gift? She's not claiming it. It was gifted to her voluntarily. But I think, and again, going below, and as the Court has pointed out, it was not in the appellant's brief, but the Court had ruled this couldn't be a gift. Let me give you a hypothetical. Suppose there was evidence that they had a conversation after, five years after the settlement agreement, where he called her and he's like, you know what? It's been five years. I'm not going to change my beneficiary form. I think you should get this money. I want to give you the money. My father doesn't need the money. All right? Your position would be that that was precluded by this language. Is that your position, that she would still not be entitled to that money? This is so, Your Honor, with all due respect, that's so far from the facts, because if that were the case, that would have been. I know, but it goes to what this language means. Was that an intent? Is it an intent that that could never happen under any circumstance? And, in fact, the case in Stalins, this case in Massachusetts, I think you're familiar with. Yes. That's exactly what happened. It was evidence that after the marriage ended that there was some type of understanding that I want you to still have this money.  So it's not like that's an impossibility that someone could be leaving open that possibility. You don't have any legal right to this by virtue of our marriage, but still leave open the possibility that if he, down the line, wanted to keep that form in place and made it a conscious decision to keep that form in place, that she could still recover. Well, that would mean that under those circumstances, it was the intent of the parties to waive the waiver. But in the facts of this case, there's no evidence that that happened, that I'm sure that the appellant's attorney would have put that in in opposition to the summary judgment. If there was any evidence at all that he changed his mind, and the reason why he didn't change the form was because he wanted his ex-wife to get the money. Can I focus, though, on the language? I mean, this waiver sentence is not the only sentence that we're looking at in interpreting the agreement. It specifically says that nothing herein contained shall require either party to renounce or otherwise disclaim any gift, device, or bequest that may be given by will, trust, or other document. Now, why isn't a beneficiary designation on a pension or an annuity exactly parallel to a device or bequest? It's something that he can always change before he dies, but it takes effect upon death. Why isn't the district court's interpretation essentially negating this language? Because under the circumstances here, this beneficiary designation was put into effect and was signed, I believe, something like 15 or 20 years before the divorce, and therefore it was already there. But it doesn't take effect, right? He can change it at any time. It doesn't become an effective gift or transfer until he dies. Well, I think that they're considering what was put in this paragraph. I don't think that could, from the facts and circumstances of the case, I don't think that could at all be interpreted as a gift or any kind of bequest. I think he would have to do something afterwards because as of the date that this agreement was entered into, the facts were that she was designated as the beneficiary and that she was renouncing it in this paragraph. If he wanted her to get it, he would have to have, in my opinion, created a new designation form, saying that she was still the beneficiary. But even if he did that, on your theory, this would preclude it because she's waived it. Well, she waived the right to be named as a right, but if for some reason, under the court's hypothetical, he had a change of heart, which would mean that the circumstances had changed. Because remember, the court has to look at the facts and circumstances at the time that the agreement was entered into. Here, what the court is suggesting would be a change that happened after this agreement was entered into. And if at that point, the decedent wanted his ex-wife to get the money after all, this would have to be the subject of either a new designation or some kind of writing, you know. It would have to be a new PSA, you're suggesting, right? They would have to amend. You have to amend it, yes. Because under this paragraph, she's renounced her rights. So even if she had a sign, even if they had a conversation where he told her, your argument would be that this language still controls. Yeah, unless they added something to the agreement to change it. Now, going to the subject of third-party beneficiary, it's obvious that the father was the third-party beneficiary. As the court points out in his opinion, obviously, the decedent knew. The decedent is the person who designated his father. So at the time he signed the agreement, there's no question he knew that his father was going to be the beneficiary in the event that he. When you say there's no question that he knew, is that sort of a constructive knowledge? I mean, I don't remember things I signed 20 years ago. I might constructively know, but are you saying we have evidence that he consciously knew? Well, I think the evidence that he consciously knew is the fact that it was so important to him that there be a clause in this agreement. I mean, one thing that if you look at the agreement as a whole, he gave her everything. And there's deposition testimony that's in my brief and it's in the record that the reason he did this was because it was so important to him that he be able to keep the pension and be able to keep the annuity. But if it was that important, why doesn't he change the primary beneficiary? Because isn't this a two-edged sword about how everyone was aware of this at the time, which means they valued the pension benefit, they included it in the PSA. You're saying this was key to him, but he never went back in and changed the beneficiary. Well, that's true. And, of course, the reason that he didn't change, he took with him to the grave, unfortunately. However, it could be, and I think this is the presumption that should be made, is that since his wife, ex-wife, signed this agreement, that he felt that he was safe. He felt she signed an agreement. You know, if by some chance I were to die young, which he ended up doing, you know, I'm protected by this agreement. It's not going to go to her. It's going to go to my father. And this could have... Let me just follow up on both of those questions. There's a lot of... He could have forgot he signed the form at all. He could have forgot there was a second name in the form. He knew she wasn't going to get it, but that doesn't necessarily... He has some independent recollection of signing a form, giving it to his father, right? That doesn't necessarily have to logically follow, right? I could be signing an agreement and say, I don't want you to get it, but not be thinking about who in my family is going to get it, right? If he had signed any form, it would still go to someone in his family, right? Well, you know, this is all honestly speculation. We have to go with what we know. And what we know is that... But you were the one who was saying, you're the one who said, we know that he wanted his father to get it. So we're just pointing out to you there's a lot of scenarios where... Right. But it's based on the documents. It's based upon the documentary evidence that we have. He designated his father. I mean, what we're suggesting is that something this important he would have forgotten about. I mean, he could have. It's possible. I mean, again, we don't know because, unfortunately, the decedent is no longer with us. But at the time that he signed the agreement, I believe it could be presumed this was in the front of his mind. And the fact that he didn't change the designation, which, of course, he should have, you know, he just may have felt he didn't have anything to worry about because of this agreement. I mean, we, unfortunately, none of us really know. And we can't know. There can't even be any discovery. Your acknowledgment that we can't know feels a little in tension with your assertion that we do know. And there are two things going on in this divorce negotiation as it relates to the pension and the annuity. One is the lifetime benefit, right? And so that's probably one of the biggest assets of the marriage. It wouldn't be uncommon for him to say, I'll take the pension, you take the house or whatever the countervailing assets are. But that doesn't mean he's thinking about the survivors. He's thinking about his income for the rest of his life. Whether or not he even gave a thought to the survivorship question is entirely, unless we think it's controlled as a matter of law by the documents, it's entirely a matter of speculation, isn't it? Well, but you have to go to the document. The fact that what was put into the agreement explicitly was that she waived any rights she may have as a survivor beneficiary would mean that he didn't want her to get it after he died. No, no. She didn't waive any rights she might have as a survivor beneficiary. She waived the right to be named as a survivor beneficiary. Right. But when the whole paragraph is put, is read together, which is what the court did, it found that by her taking the benefits after her ex-husband died that she was, in fact, reaching the agreement. And while what you're saying is true, he may not have known, he may not have remembered who he designated. He knew he designated someone. And if we want to go even further and say maybe he forgot he even filled out the form at all, in that case, when he died, he knew that it would go to his heir, who in this case happened to be his father as well because he didn't get remarried, didn't have any children, so it would have gone to his father. In any event, he knew it was going to go to somebody other than his wife. And he did know, I would hope, and he didn't have a will, so he knew it was going to go to his heir. He knew it was not going to go to her. If he didn't explicitly know his father because he forgot under this scenario, he did know that it was going to go, in that case, to his heir if he died. He didn't have a will, so it would have gone to whoever by law would be the next person, which happened to have been his father. It would be a really weird thing to name your father as a survivor beneficiary on an instrument unless you had a terminal disease, right? Because just by ordinary happenings, it's usually the father is going to pre-decease. Yes, yes, but he did name his father as the secondary beneficiary. And he apparently, I believe, was okay with that. Otherwise, he would have made a change. We have to go by the facts that we do know, and the facts that we do know is he named the father. The facts that we do know is that there's a paragraph in this agreement that she's waiving survivor rights or her right to be named as a survivor. These are things that we know. I see I've, over the time, the one thing that wasn't addressed by either of us, and I don't know if you want to hear about it, is the claimant. I just want a factual matter. When she receives that money, does she put a claim in for that money or just automatically goes to her because of the designation? It doesn't automatically go to her, and I'm glad you brought that up. At the time when she was informed that she had this annuity and she had this pension, under the plan rules, and this is in the record, under the plan rules, she was supposed to fill out a waiver form, but she didn't do that. And by not doing that, she extinguished any rights that the secondary beneficiary had. She was supposed to do that. It was in the instructions that she got. But you said she was supposed to in order to honor what you say are her obligations under the Merit Center.  No, but other than doing that, the money just comes automatically. She doesn't have to do anything affirmatively. She has to fill out a form. Something other than the waiver form? Yes, something other than the waiver form because she has options under the plan agreement, whether to take the pension in one lump sum, whether to take it in payments. They don't just like one day she opens up an envelope in the mail and there's a... Is that in the record, that form that she filled out, or is that not in the record? I know that we put in the parts of the plan documents, whether or not the form she filled out. I believe they are in the record, but I couldn't tell you as I'm standing here right now what page of the record. All right. Okay, thanks. Okay, I'm over time. I don't know if you want to hear about the issue of excessive damages or not. I don't, unless my colleagues have any questions. No, we're good, thanks. No questions. Thank you for your time. All right. Mr. Prosher, you have one minute. Sure, Your Honor. Can you just address that first? If I could just work backwards, yeah, I will. So basically what is the paper that is submitted by Ms. Wood to the union essentially identifies her, proves her identification, and then essentially identifies a bank or an institution so that the money can be transferred. It's not anything more. Did they send her a notification saying you're the beneficiary? She received a letter from the union that essentially said you have been designated as the primary beneficiary under Mr. Wood's forms. You are entitled to the annuity and the pension. Here is the paperwork. Please submit it and essentially go from there. The address where she's going to receive the pension. As Mr. Friedman was saying, she was entitled, I believe, either to installment or a lump sum. So more what I would consider administrative as opposed to affirmative. Hold on a second. I'm going to send Mr. Cloudman to start your time. That was free time right there. It's okay. No problem. Go ahead. So the two points I wanted to address off what was raised by Mr. Friedman, I just want to talk about the logical fallacy of his argument as well as what was raised by the lower court. Everyone keeps saying that Mr. Wood knew that the father was the contingent beneficiary because he's on a beneficiary designation form. And all they keep doing is skipping over the fact that that requires him to know about the form and to know that Andre, Ms. Wood, is still identified as the primary and that he's not making any change to it. So in our position, this goes back to what we addressed before, that it is our opinion and based on what's in the record, and that's admissible, what Mr. Friedman is referring to is a dead man statue because it was the ex-girlfriend talking about. The argument in response to that is that he assumed based upon the PSA that he didn't have to change the form, that she had waived it and he didn't have to change the form. That would be the argument. That is the argument. Right. I don't believe it's supported by anything that's actually in the record. And as to the point that was raised, Mr. Friedman also used the word that basically the decedent conclusively knew about 14 times in a sentence to show a pattern of sequences of what needed to be done to show intent in this. And that is flatly not within the record. And plaintiffs definitely did not establish that as the decedent having the father as an intended third-party beneficiary based upon anything that's in the record. I mean, frankly, the lower court engaged in a speculative line of reasoning as well as to presumptions. So unless Your Honors have any other further questions, we rest on our papers and thank you for your time. All right. Thank you both. We'll reserve decision. Have a good day. Thanks. All right. The last case being argued today.